IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCULUS INNOVATIVE SCIENCES, INC., | No. C-08-04707 MMC |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| PRODINNV, S.A. de C.V. and CESAR MANGOTICH PACHECO, | |
| Defendants / | |

Before the Court is plaintiff Oculus Innovative Sciences, Inc.'s ("Oculus") Application for Entry of Default Judgment ("Application") against defendants Prodinnv, S.A. de C.V. and Cesar Mangotich Pacheco (collectively "defendants"), filed June 1, 2010, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. On October 8, 2010, Oculus, with leave of Court, filed a supplemental memorandum and supplemental declarations in support of the Application. Defendants were served with a copy of the Application, (see Proof of Service by Fedex 2, Doc. No. 58) and with a copies of the supplemental memorandum and declarations (see Proof of Service by Fedex 2, Doc. No. 75), and no opposition has been filed.[1] Having considered the papers filed in support of the Application, the Court deems the matter suitable for decision thereon and rules as follows.

---

[1] The Application was noticed for hearing on July 9, 2010. Accordingly, any opposition was to be filed no later than June 18, 2010. See Civil L.R. 7-3(a). By Clerk's Notice filed July 7, 2010, the hearing was vacated.

## BACKGROUND

Oculus filed the instant action on October 10, 2008.  Oculus alleges that defendants misappropriated and wrongfully used, both in the United States and Mexico, Oculus's confidential information relating to Oculus's Microcyn technology and product.  (See Compl. ¶¶ 11-14, 22-29.)  Specifically, Oculus alleges that, during the time it employed defendant Cesar Mangotich Pacheco ("Mangotich"), Mangotich had access to Oculus's confidential information (see id. at ¶¶ 15, 20; see also Alimi Decl. ¶¶ 7, 9, June 1, 2010); that as part of his employment, Mangotich had signed an Employment, Confidential Information, Invention Assignment and Arbitration Agreement ("ECIIAA Agreement") prohibiting Mangotich from disclosing confidential information or competing with Oculus (see Compl. ¶ 18; see also Alimi Decl. ¶ 10); and that Mangotich, while still employed at Oculus and without Oculus's knowledge, formed Prodinnv, S.A. de C.V. ("Prodinnv"), a Mexican company, to compete with Oculus and manufacture and sell products, namely Esterilife, Varul, and Qx, which products were essentially identical to Oculus's Microcyn product, and that Mangotich used Oculus's confidential information to do so (see Compl. ¶¶ 22-26; see also Alimi Decl. ¶¶ 11-13).  Oculus further alleges that defendants continue to manufacture those products and to sell them to Oculus's customers.  (See Compl. ¶¶ 27-28; see also Alimi Decl. ¶ 14.)  Based thereon, Oculus asserts state law claims for breach of contract, misappropriation of trade secrets, interference with contract and with prospective economic advantage, and unfair competition.  (See Compl. ¶¶ 31-58.)

A summons attaching Oculus's complaint was served on defendants on January 8, 2009.  (See Doc. No. 3.)  Defendants did not file an answer, but instead submitted a letter, which was written in Spanish.  (See Doc. No. 22.)  On November 24, 2009, defendants were ordered to file, on or before December 21, 2009, a responsive pleading in English.[2]  (See Doc. No. 20; see also Proof of Service (attachment to Doc. No. 20).)  Further, defendants were reminded that Prodinnv, a corporate entity, must be represented by

---

[2] On February 11, 2010, defendants' letter was ordered stricken.

counsel, and were informed that a failure to retain counsel would result in entry of default as to such corporate party. (See Doc No. 20.) On February 11, 2010, the Court extended defendants' time to respond to Oculus's complaint to March 12, 2010. To date, defendants have not filed an answer to the complaint, refiled their letter in English, or made any other appearance.

**LEGAL STANDARD**

After entry of a default, a court may grant a default judgment on the merits of the case. See Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As noted in the Court's previous order deferring ruling on Oculus's application for default judgment, upon entry of default,[3] "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." See Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

**DISCUSSION**

**I.   Jurisdiction**

As alleged in the complaint, Oculus is a resident of California and Delaware (see Compl. ¶ 2), defendants are residents of Mexico (see id. at ¶ 3, 4), and the amount in controversy exceeds $75,000 (see id. at ¶ 34 (claiming $6.3 million in damages)). The Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

**II.  Default Judgment**

As noted, default has already been entered by the Clerk; consequently, this Court

---

[3] The Clerk entered the default of each defendant on April 28, 2010.

has discretion regarding whether to enter judgment against defendants. See Aldabe, 616 F.2d at 1092.  Considering the factors set forth above, the Court finds default judgment is warranted.   First, Oculus will be prejudiced unless default judgment is entered; defendants' refusal to respond to the complaint or to court orders demonstrates such judgment is Oculus's sole avenue of relief.  Second, the allegations in the complaint, taken as true, demonstrate the merits of Oculus's claim against defendants.  Oculus has alleged a contract between itself and Mangotich and breach by Mangotich, as well as interference with Oculus's contractual relations with customers and misappropriation of trade secrets, namely the Microcyn technology, and unfair competition by both defendants, all with resulting injury.  Third, Oculus's complaint provides sufficient notice under Rule 8(a) of the Federal Rules of Civil Procedure.  Fourth, Oculus alleges a substantial loss as a result of defendants' conduct, as to which defendants have raised no dispute.  Fifth, defendants have raised no dispute as to any other material fact.  Sixth, defendants have provided the Court with no excuse for their failure to respond to the complaint.  Seventh, and lastly, while the Court is mindful of "the general rule that default judgments are ordinarily disfavored" and that "[c]ases should be decided upon their merits whenever reasonably possible," Eitel, 782 F.2d at 1472, defendants utter failure to respond to the complaint has effectively precluded resolution on the merits.

**III.   Damages**

In its supplemental memorandum, Oculus seeks an award of damages in the total amount of $3,304,794 (Supp. Mem. 1:15), as well as a permanent injunction (1) prohibiting defendants from "using or disclosing Oculus'[s] confidential, proprietary information, including Trade Secrets as defined in Cal. Civ. Code. sec. 3426, et seq."; (2) prohibiting defendants from "manufacturing the 'Infringing Products' marketed and sold under the brand names Esterilife, Varul and Qx"; and (3) requiring defendants (a) to "return to Oculus any documents or materials which contain, discuss or reflect Oculus'[s] Confidential

1  Information, (as defined in the ECIIAA Agreement)[4] including Trade Secrets as defined in
2  Cal. Civ. Code sec. 3426, including without limitation all Confidential Information and
3  Specifications, Customer lists and other documents provided to [d]efendants in connection
4  with the employment contracts at issue in this action," (b) to "provide Oculus with an
5  accounting of profits from their manufacture and sale of the 'Infringing Products' to third
6  parties," and (c) to "disgorge all such profits to Oculus" (see Proposed Order at 2:4-17, Doc
7  No. 74).

### A.    Calculation of Oculus's Losses

The Court, in its September 8, 2010 order deferring ruling on Oculus's Application ("Order"), found the Application, as initially filed, suffered from a number of deficiencies related to the calculation of damages. Specifically, the Court noted that Oculus sought recovery for future losses while at the same time seeking injunctive relief, the declaration submitted by Oculus's Chief Financial Officer, Robert Miller ("Miller"), in support of its damages calculation failed to "establish a sufficient foundation for how he arrived at the figures," and the spreadsheet attached to said declaration contained mathematical errors. (See Order 2:18-3:26.)

In its supplemental memorandum, Oculus no longer seeks damages for future losses. Further, Oculus has submitted a revised declaration from Miller as support for its damages calculation, along with a revised spreadsheet. Miller now states that "[i]n preparing this spreadsheet, [he] reviewed data contained in the company's financial and accounting records, including data provided to [him] by Everado Garibay, Director of Finance and Administration, Oculus, Mexico." (See Miller Supp. Decl. ¶ 4.) Miller attests to the accuracy of the data contained in those documents, states that he receives such reports monthly, and notes that it is the same data used by Oculus to prepare filings with the Securities and Exchange Commission and in "disseminating information to financial analysts and the investing public." (See id.) Miller's supplemental declaration provides a

---

[4] The ECIIAA Agreement is attached as an exhibit to Oculus's complaint.

1 sufficient foundation for Oculus's submission of a damages calculation.  See U.S. v.
2 Shumway, 199 F.3d 1093, 1104 (9th Cir. 1999) (finding where "personal knowledge and
3 competence is established by the affidavit," such affidavit should be admitted by the court).
4 Lastly, Miller has cured the mathematical errors contained in his previous declaration.
5 Oculus's damages calculation nonetheless continues to suffer from a number of
6 deficiencies, and thus fails to support its claim for $3,304,794.

7       First, $2,456,519 of the amount claimed is attributed by Oculus to losses resulting
8 from the sale of units at a discount due to the need to compete with defendants' infringing
9 products.  (See Compl. ¶ 26; Miller. Supp. Decl. Ex. A.)  To calculate that loss, Oculus
10 subtracted the average price per unit (calculated by dividing total sales proceeds for a
11 given period by the total number of units sold in that period) from $25, the price "Oculus
12 was targeting in the several years prior to the onset of [d]efendants' conduct."  (See Miller
13 Supp. Decl. ¶¶ 6-7 (emphasis added).)  The relevant price, however, is not the price
14 Oculus sought, but the price Oculus likely would have received but for defendants' conduct.
15  See St. Paul Fire and Marine Ins. v. Am. Dynasty Surplus Lines Ins. Co., 101 Cal. App. 4th
16 1038, 1061 (Cal. Ct. App. 2002) (noting, "the breaching party is only liable to place the non-
17 breaching party in the same position as if the specific breach had not occurred"); see also
18 23 Cal. Jur. Damages § 39 ("Damages that are speculative, remote, imaginary, contingent,
19 or merely possible cannot serve as a legal basis for recovery.").  Here, Miller states that
20 "Oculus sold the product at $22.00 to $25.00 per unit prior to" defendants' unlawful
21 conduct.  (Miller Supp. Decl. ¶ 7; see also Garibay Decl. ¶ 8.)  Oculus provides no evidence
22 from which the Court can determine the number of units that were sold at the high end, the
23 low end, or somewhere in the middle of that range.  The Court thus finds Oculus has
24 provided evidence sufficient to demonstrate a sale price of no more than $22 per unit.
25 Based on a price of $22 per unit and the sales data submitted by Miller, Oculus has
26 demonstrated it is entitled to $1,597,289 in lost profits.

27       Second, $848,275 of the total amount claimed is attributed by Oculus to lost sales
28 resulting from its public sector customers' substitution of defendants' products for Oculus's

products.  (See Miller Supp. Decl. ¶ 10.)  Oculus arrived at this figure by looking to actual sales from public hospitals and privately owned hospitals, and then attributing to defendants' unlawful conduct the reduction in sales to public hospitals.  (See id. ¶¶ 9, 10.)  In so doing, Oculus "assumed that sales in the public sector should have been equal to those in the private sector."  (Id. ¶. 10.)  Oculus, however, has provided no historical sales data suggesting sales in the two markets were roughly equivalent prior to defendants' unlawful conduct, or that the two markets tend to trend in parallel fashion.  Without evidence establishing the relevance of the comparison, the Court is unwilling to adopt Miller's assumption.[5]  Consequently, the Court finds Oculus has failed to prove damages based on the sale of fewer units.

**B.     Injunctive Relief**

In addition to damages, Oculus seeks injunctive relief as described above. Injunctive relief is available under the California Uniform Trade Secrets Act ("UTSA"), Cal. Civ. Code §§ 3426-3426.11, and California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17209.  Under the UTSA, "[a]ctual or threatened misappropriation may be enjoined."  Cal. Civ. Code. § 3426.2.  Under the UCL:

> Any person who engages, has engaged, or proposed to engage in unfair competition may be enjoined . . . [and] [t]he Court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. Code. § 17203.  "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations."  MAI Sys. Corp. v. Peak Comp., Inc., 991 F.2d 511, 520 (9th Cir. 1993).  As a Clerk's default has been entered, Oculus has established defendants' liability.  Further, as alleged in the complaint, defendants continue to sell products using Oculus's confidential information, and

---

[5]Oculus's calculation is insufficient for two additional reasons.  First, it uses the unsupported sales price of $25 discussed above.  Second, it uses a gross sales price rather than a figure representing net profit.

thus there is a threat of continuing violations.

As noted, Oculus seeks an injunction prohibiting future misappropriation of its trade secrets and sale of products manufactured as a result of misappropriation, as well as an injunction mandating the return of confidential information, an accounting, and disgorgement of profits. Although both of the above-referenced sections expressly authorize issuance of an injunction to prevent future misappropriation and unfair competition, and although section 17203 of the UCL additionally provides for return of money and property, section 3426.2 of the UTSA is silent as to a court's authority to order disgorgement of profits and such disgorgement has been held not to be available as a remedy under the UCL. See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149, 1152 (2003) (holding sole monetary relief available under section 17203 is restitution; finding, in suit brought by competitor who lost sale to defendant, disgorgement of profit from such sale was "not restitutionary because plaintiff [did] not have an ownership interest in the money it [sought] to recover from defendants"). Moreover, disgorgement of profits in this instance would be largely duplicative of Oculus's compensatory damages. See, e.g., id. at 1151 (noting disgorgement would be in "exactly the same amount that plaintiff [was] seeking to recover as damages for its traditional tort claim of interference with prospective economic advantage"). Consequently, to the extent Oculus seeks an injunction requiring disgorgement of profits, or an accounting for the purposes of obtaining such an order, such injunctive relief will be denied.

## CONCLUSION

For the reasons stated above, Oculus's Application for Entry of Default Judgment is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent the Application seeks compensatory damages for lost profits, the Application is GRANTED, and Oculus shall have judgment against defendants, jointly and severally, in the amount of $1,597,289;

2. To the extent the Application seeks injunctive relief as set forth below, the Application is GRANTED:

8

   a. Defendants Prodinnv, S.A. de C.V. and Cesar Mangotich Pacheco are hereby ENJOINED from using or disclosing Oculus's confidential, proprietary information, including Trade Secrets as defined in California Civil Code Section 3426.1(d);

   b. Said defendants are hereby ENJOINED from manufacturing the products marketed and sold under the brand names Esterilife, Varul, and Qx; and

   c. Said defendants are hereby ORDERED to return to Oculus any documents or materials that contain, discuss or reflect Oculus's confidential information (as defined in the ECIIAA Agreement referenced in the complaint) including Trade Secrets as defined in California Civil Code Section 3426.1(d), including without limitation, all confidential information and specifications, customer lists and other documents provided to defendants in connection with defendant Cesar Mangotich Pacheco's employment.

  3. In all other respects, Oculus's Application is DENIED.

**IT IS SO ORDERED.**

Dated: November 16, 2010

            _____
            MAXINE M. CHESNEY
            United States District Judge